Cite as 2024 Ark. App. 593

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-24-533

| | |
|---|---|
| ALICIA ROBBINS AND COURTNEY SHELBY | Opinion Delivered December 4, 2024 |
| APPELLANTS | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28JV-22-127] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE MARY LILE BROADAWAY, JUDGE |
| APPELLEES | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellants, Alicia Robbins (custodial parent/mother) and Courtney Shelby (noncustodial parent/father), separately appeal the circuit court's May 2024 order that terminated their parental rights to their three children. They argue that the circuit court erred in its best interest finding because (1) there was no evidence presented at the April 2024 termination hearing supporting that the children are adoptable, and (2) the circuit court could not rely on any evidence presented at the November 2023 hearing at which termination was denied. We affirm.

The children in this case are a son born in 2014, a daughter born in 2019, and another son born in 2020. The youngest child has autism and global developmental disorder. The Arkansas Department of Human Services (DHS) had repeated interactions with this

family dating back to 2014, including investigations related to alleged physical abuse, failure to protect, and environmental neglect.

In June 2022, DHS petitioned for emergency custody and a finding of dependency-neglect. DHS had made findings of inadequate supervision in 2021 and educational neglect in 2022. Courtney had been found in contempt of court in a Family in Need of Services (FINS) case because the oldest child had missed seventy days of school, and, when the child did attend, he was often late to arrive and late to be picked up. Courtney was ordered to serve ten days in jail. Courtney reported that he was the children's caregiver and that Alicia, whose whereabouts were unknown, had ongoing substance-abuse issues. The FINS court ordered DHS to place a hold on all three children, which was why DHS filed the petition in this case.

Alicia was arrested in July 2022 and remained incarcerated for most of this DHS case. In August 2022, the parents stipulated that their children were dependent-neglected due to the Alicia's incarceration. The case plan ordered the parents to obtain and retain suitable employment and housing, to take parenting classes, to submit to drug testing, to cooperate with DHS, and to keep DHS informed of their addresses. DHS permitted Courtney up to four hours of unsupervised weekly visitation outside his mobile home, which was unsuitable for the children. DHS provided Courtney parenting classes, helped him obtain financial support for the children, and provided needed and wanted items like diapers, wipes, and Christmas gifts.

After a January 2023 review hearing, the circuit court found Alicia noncompliant and Courtney minimally compliant with the case plan. After a July 2023 permanency-planning hearing, the circuit court found Alicia noncompliant and Courtney minimally compliant with the case plan.

In October 2023, DHS filed its first petition to terminate parental rights. Alicia had been released from incarceration in early September and was currently in residential treatment that did not allow children. DHS alleged that she was noncompliant with any of the case-plan requirements. DHS alleged that Courtney, who lived in a mobile home with other people, would not permit DHS into the home, so DHS could not verify the home's suitability for the children. He failed to prove that he was employed or had reliable income; he did not complete a drug-and-alcohol assessment; he repeatedly tested positive for THC; and he sporadically visited the children, but because the children often smelled like marijuana and were hungry upon their return, his visitation was converted to supervised. DHS alleged that there was little likelihood that further services would result in reunification with either parent and that Courtney had effectively abandoned his children.

After a November 2023 hearing, the circuit court denied the petition to terminate parental rights due to the strong bond between Courtney and the children and the possibility that he might regain custody of all three children. Although the children had been in DHS custody for approximately a year and a half, both parents remained unfit. Courtney was deemed partially compliant and Alicia noncompliant. She tested positive for THC, was unemployed, and did not have a safe appropriate home for the children. After a February

3

2024 review hearing, the circuit court changed the goal to adoption, which was followed by DHS's second petition to terminate. DHS alleged the failure-to-remedy, other-subsequent-factors, and aggravated-circumstances statutory grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2023).

At the conclusion of the April 2024 hearing, both Courtney's and Alicia's attorneys argued that DHS failed to provide any evidence regarding adoptability so that the petition should be denied and their clients given more time. Both attorneys added that the prior termination hearing was res judicata on the issue of adoptability.[1] DHS's attorney disagreed.

The circuit court found that DHS had proved all the statutory grounds, stating in part that it had "rarely seen such a lackadaisical and cavalier attitude" demonstrated by the parents about reunification. Alicia was living with her uncle who would not allow her children in his home, and she had no plans to move. She did not visit her children after her release from incarceration; she was not employed; and she would not submit to a hair-follicle test until the day before this termination hearing. The circuit could had given Courtney several more months, but he "appallingly" failed to visit his children "for months at a time" despite his claim of a strong bond with his children. He never obtained suitable housing or stable employment; he continued to use marijuana without presenting a medical-use license; and he failed to submit to a hair-follicle test until the day before this termination hearing. The circuit court found that "[n]either parent appeared to have any real motivation to take

---

[1]The order denying the first termination petition made no findings on adoptability; it permitted additional time because of Courtney's bond with the children.

the actions necessary to be reunited with their children" in the nearly two years this DHS case had been open.

The circuit court also found that termination was in the children's best interest, having considered their adoptability and the potential harm to them if returned to either parent. The circuit court noted that adoptability and potential harm are two considerations but not essential elements to be proved; rather, it is the ultimate best-interest finding that must be supported by clear and convincing evidence. For the adoptability factor, the circuit court relied on "evidence throughout the history of this case" and found that res judicata did not bar it from considering evidence presented at earlier hearings. The court further found that nothing had changed from the prior hearing; that the evidence demonstrated that the children (then ages nine, five, and three) were currently happy, healthy, and thriving; and that the youngest special-needs child was greatly improving from therapeutic services.[2] This appeal followed.

We review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Goforth v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 233, 666 S.W.3d 138. Only one statutory ground must be proved to support termination. *Id.* A circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, "*taking into consideration (i) [t]he likelihood that the juvenile will be adopted* if the termination petition is granted; and (ii) [t]he potential harm, specifically

---

[2]A court report indicated that the youngest child had "tested out" of physical therapy but continued to need occupational and speech therapy.

addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent." Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (emphasis added.)

Neither parent takes issue with the circuit court's findings that DHS proved all three statutory grounds against them and that there was potential harm in returning the children to them. The focus of this appeal is on the findings related to the likelihood that the children would be adopted. The parents contend there was no evidence whatsoever presented at the second termination hearing regarding any of the children's adoptability and that, by statute, the circuit court was not permitted to consider any evidence on adoptability presented at the first termination hearing. We are not convinced that the circuit court committed reversible error.

It is beyond dispute that the circuit court took the children's adoptability into consideration when deciding that termination was in their best interest. Specifically concerning adoptability, the circuit court recited the children's positive characteristics and the youngest child's improvement with therapeutic services since being placed in foster care.

The real issue, then, is whether there was any competent evidence on which the circuit court could rely in considering their adoptability. As stated, "best interest" must include "consideration" of two factors, the likelihood of adoption and potential harm. *Westbrook v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 352, at 3, 584 S.W.3d 258, 260. The parents acknowledge that adoptability is not an essential element of proof. Indeed, the applicable statute does not require any "magic words" or a specific quantum of evidence regarding a child's adoptability but simply provides that the circuit court consider the likelihood that the

6

child will be adopted in making its best-interest determination. *Id.*, 584 S.W.3d at 261. There is no requirement that DHS disprove all possible barriers to adoption, such as behavioral issues, by clear and convincing evidence. *Cullum v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 62, 639 S.W.3d 905. Evidence that adoptive parents have been found is not required and neither is evidence that proves the child will be adopted. *Alexander v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 345, 634 S.W.3d 807. In fact, termination can be proper even if the evidence shows adoption is unlikely if termination is nonetheless in the child's best interest. *Mitchell v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 37, 682 S.W.3d 748. Even if no witness in this case testified that the children "are adoptable" or said that there was a "very good likelihood" of adoption, on de novo review, we can decide that the record is clear enough to see that the circuit court did what it was statutorily required to do: consider the likelihood that the children would be adopted. *See Sharks v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569.

Arkansas Code Annotated section 9-27-341(a)(4) specifically requires a court to "rely upon the record of the parent's compliance in the entire dependency-neglect case and evidence presented at the termination hearing in making its decision on whether it is in the best interest of the juvenile to terminate parental rights." The parents argue that this statute means that only evidence presented at the last termination hearing can be considered when deciding whether there was any evidence supporting adoptability. We question whether this specific argument was made to the circuit court. Nonetheless, even if we agreed with that interpretation, we are satisfied that there was evidence bearing on adoptability when evidence

was presented about the status of each child, their success in their current placements, and each child's positive characteristics.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). The circuit court found that after nearly two years, the parents remained unmotivated to achieve reunification and unable to safely and appropriately parent their children. Having conducted a de novo review of this case, we hold that the circuit court's best-interest finding is consistent with the purpose of the Juvenile Code, which is to provide permanency to the child.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for separate appellant Alicia Robbins.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant Courtney Shelby.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.